UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL COLLINS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-11702-IT |
| | * | |
| MARK T. ESPER, SECRETARY OF THE ARMY,[1] | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 20, 2018

TALWANI, D.J.

Plaintiff Michael Collins challenges an Army Board for Correction of Military Records ("ABCMR") decision denying his request for correction of his military record to reflect that he was wrongfully disenrolled from the Army Senior Reserve Officers' Training Corps ("ROTC") Program. Before the court are Collins' Motion for Judgment on the Pleadings [#24], the Secretary of the Army's ("Secretary") Motion to Affirm ABCMR's Decision [#27], and the Secretary's Motion to Supplement the Record [#26]. For the reasons that follow, Collins' motion is ALLOWED in part and DENIED in part, and the Secretary's motions are DENIED. The decision of the ABCMR is VACATED, and this matter is REMANDED to the ABCMR so that it may promptly conduct further proceedings not inconsistent with this opinion.

---

[1] The court hereby substitutes Mark T. Esper, Secretary of the Army, for Ryan McCarthy, pursuant to Federal Rule of Civil Procedure 25(d).

1

I. Background

A. *The Army ROTC Scholarship Cadet Contract*

In September 2005, Collins signed an Army ROTC Scholarship Cadet Contract ("Contract"). Administrative Record (hereinafter "R. [page no.]") 47 [#15]. The Contract represented an agreement between the Army and Collins for Collins to participate in the Army ROTC program. R. 40, 47.

According to the Contract, the Army agreed to provide scholarship benefits to Collins while he attended Northeastern University, contingent upon Collins' adherence to numerous terms. Id. at 45. One term of important note is the Contract's "Full-Time Student Agreement" provision, which states:

> I agree to remain a full-time student in good standing at the educational institution named above until I receive my degree. A full-time student is defined as one enrolled in sufficient academic courses to obtain sophomore, junior, and senior academic status at the end of each appropriate one-academic-year increment for the duration of the scholarship. This includes the required Army ROTC classes, which may be part of or in addition to those courses required for my degree.

Id. at 42. Moreover, the Contract provides:

> I understand that I may be deemed to have failed to comply with the terms and conditions of this contract *(breach of contract)* regardless of whether I knew that the failure violated the contract and regardless of whether the failure was the result of an act or omission on my part made with a specific intent to avoid responsibilities under the contract.

Id. at 45.

A cadet's failure to comply with any term of the Contract entitles the Army to initiate that cadet's disenrollment from the ROTC Program. Id. at 45. The Contract specifies certain consequences of disenrollment from the program for "breach of contractual terms or any other disenrollment criteria . . . ." Id. First, a subsection on the cadet's agreement to serve on enlisted active duty provides that the Secretary "may order me to active duty as an enlisted soldier, if I

2

am qualified, for a period of not more than four (4) years if I fail to complete the ROTC program." Id.[2] Another subsection states:

> If I am offered the opportunity to repay my advanced educational assistance in lieu of being ordered to active duty, I will be required to reimburse the United States government through repayment of an amount of money, plus interest, equal to the entire amount of financial assistance . . . paid by the United States for my advanced education from the commencement of this contractual agreement to the date of my disenrollment or refusal to accept a commission.

Id. As between repayment and active duty, the reimbursement section further provides: "If I am disenrolled from ROTC, I understand the Secretary of the Army, or his or her designee, retains the prerogative to either order me to active duty or order monetary repayment of my scholarship benefits." Id.

Another subsection provides that "whether voluntarily or because of misconduct," a cadet's failure to begin or complete active duty or duty in reserve status would also trigger a reimbursement requirement. Id.

A "Complete Agreement and Severability" provision appearing near the end of the Contract states, "I understand the provisions in the contract contain the only binding promises by and to both parties. This agreement controls over any conflicting advice or information that I may have received orally or in writing from Cadet Command, my [Professor of Military Science], other cadre, cadets or others regarding my obligations and agreements to the Army." Id. at 46.

Although the Contract provides scholarship benefits for a period of four academic years, the Contract also states that the date the education would commence was September 7, 2005, and

---

[2] The Contract correlates the term of active duty service to the year during which breach occurred. Thus, a breach during year two could require active duty service of two years, a breach during year three could require active duty service of three years, and a breach during year four could require active duty service of four years. Id. at 45.

the date of completion was May 30, 2010, id. at 40, a five-year period. Collins' signature appears at the end of the Contract. Id. at 47.

> B. *Collins' Academic Program at Northeastern University through the Disenrollment Proceedings*

Collins began a five-year program at Northeastern University in September 2005. Northeastern University's five-year program allows students to engage in co-op experiences during some semesters while attending regular courses during other semesters. Compl. ¶¶ 6-7 [#1]. It also provides for an additional "middler" year beyond the traditional four-year curriculum. Id. ¶ 10. Collins' transcript reflects that he completed 18 semester hours in Fall 2005, 17 semester hours in Spring 2006, 11 semester hours in Summer 2006, 20 semester hours in Fall 2006, 12 semester hours in Spring 2007 during his Co-op, 6 semester hours in Summer 2007 during his Co-op, and 16 semester hours in Fall 2007 during his middler year. R. 48. In Spring 2008, Collins incurred grades reflecting incomplete performance and received credit for only one course, totaling four credits. R. 29.

According to an August 2008 memorandum from Collins' Assistant Professor of Military Science to Collins, the ROTC had counseled Collins in April 2008 that he had until July 2008 to rectify any and all issues in the incomplete Spring 2008 classes, and to draft an essay on the importance of meeting all assigned tasks in a timely manner. Id. Over the summer of 2008, Collins failed to complete his American Military History class, failed to rectify the academic issues from his Spring 2008 semester, and failed to draft the required essay. Id. at 56. The August 2008 memorandum stated that unless Collins met with the Army by September 5, 2008, the Army would "initiate disenrollment action for breach of contract for failure to maintain full time student status." Id.

C. *Disenrollment Proceedings*

The Professor of Military Science initiated a disenrollment action in November 2008. Id. at 57. A memorandum informed Collins that this action was pursuant to Army Regulation 145-1, paragraph 3-43a(16), which provides for disenrollment based on breach of contract. See Def.'s Mem. in Support of Def.'s Mot. to Affirm Ex. 1 ("Army Regulation 145-1") [#28-1]. According to the memorandum, Collins breached his contract based on his "failure to maintain full-time student status in Spring 2008 as defined by Northeastern University." R. 57. The memorandum stated that Collins' "official transcripts show[] you taking a total of 8 credit hours, 4 hours of which was your ROTC class. This act constitutes a breach of contract." Id. The memorandum informed Collins of his right to request a hearing in front of a board of officers. Id.

Collins replied to the November 2008 disenrollment memorandum by completing and returning an enclosed "Acknowledgment of Cadet" form. On that form, Collins requested a hearing at which he could personally appear and respond regarding his disenrollment and the amount or validity of his debt. Id. at 60.[3]

A board of officers was appointed to investigate four questions. Id. at 62. First, whether Collins entered into a valid Army ROTC contract of his own volition. Id. Second, whether Collins received scholarship benefits from the Army in the amount of $89,451.00 while he was enrolled in the ROTC program. Id. Third, whether there were grounds for Collins' "disenrollment in accordance with AR 145-1, paragraph 3-43a (16), i.e., for failure to maintain

---

[3] He also signed his initials on a line next to the following text: "decline call to active duty within 60 days after completion of my current projected graduation date or upon withdrawal/dismissal from school, whichever occurs first." Id. He further signed next to the words "decline expeditious call to active duty." Id. at 61. Despite Collins having initialized these lines, neither Collins nor the Army treated this at the time as resolving any issues relating to his disenrollment or repayment of scholarship benefits.

full-time student status in Spring 2008 as defined by Northeastern University." Id. Although framed as a question, this came with the following statement: "Your official transcripts show you taking a total of 8 credit hours, 4 hours of which was your ROTC class. This constitutes a breach of contract." Id. Fourth, whether Collins should repay his debt or be ordered to enlisted active duty. Id.

A hearing was held before the board of officers. The board of officers first found that Collins entered into a valid contract and received $89,451.00 in scholarship paid by the ROTC program for his courses at Northeastern University. Id. at 66. The board then found that "Collins did voluntarily fail to complete his requirements of the contract by his failure to maintain good standing in his academics through his misconduct." Id. The board explained:

> In Spring 2008, Cadet Collins was originally scheduled for 5 classes (1 ROTC) for a total of 20 credits . . . . Of his 16 planned academic credits . . . , Cadet Collins finished with 0 credits completed. . . . This is due to lack of attendance and involvement in the coursework. . . . According to testimony by Cadet Collins, he has not made any effort to complete any of the courses and return to good standing through DEC 08. . . . While he received an A- for [the ROTC class], his record shows that he did not maintain good standing for his required 12 credits to be in compliance with the terms of the contract.

Id. The board concluded Collins' "misconduct does qualify as misconduct under 10 U.S.C. [§] 2005(a)(3) that warrants recoupment." Id.

The board of officers recommended that Collins be disenrolled from the ROTC program, held to his obligation to repay scholarship benefits, and not ordered to active duty due to his "lack of maturity in dealing with [sic] a challenging situation with one of his friends" and "refus[al] to deal with his realities." Id.

Collins filed a rebuttal to the board of officers' recommendations. Id. at 67-68. He acknowledged "the implications of [his] failure to fulfill [his] contractual obligations," accepted responsibility for his inability to correct the situation at the end of the Spring 2008 semester, and

6

admitted that he made mistakes and "dug [him]self into a hole that [he] could not get out of." Id. at 67. Collins further wrote that it was never his intention to challenge the "recommendation that [he] be disenrolled from the ROTC Program." Id. Collins instead challenged the recommendation that he be ordered to repay scholarship benefits in lieu of active duty due to his lack of maturity. Id. at 67-68. Collins requested that the United States Army Cadet Command review his performance reports, which he claimed did not indicate that he "lack[s] personal courage or decision making ability." Id. at 68. Collins wrote: "I freely admit to mistakes and moments of bad judgment, but I do not think that the mistakes I made (breach of contract) are sufficient grounds for attempting to ruin and discredit my reputation for the remainder of my life." Id. Finally, he wrote that if the Professor of Military Science's "remarks had stayed true to the original intent to disenroll me due to my breach of contract I would not be writing this letter of rebuttal." Id.

Three months after Collins submitted his rebuttal to the board of officers' recommendations, Major General Arthur M. Bartell, Commander of the United States Army Cadet Command, sent Collins a letter stating that he was disenrolled from the ROTC Program under Army Regulation 145-1, paragraph 3-43a(16), "due to breach of the ROTC contract based on your failure to maintain full-time student status in spring 2008 at Northeastern University." Id. at 69. General Bartell wrote that Collins was required to repay the debt of $89,451.00. Id.

Collins requested an appeal of the United States Army Cadet Command's final decision. Id. at 73-76. Collins obtained counsel and presented the following arguments: First, his disenrollment was unfair because it "failed to take into account [his] Summer 2008 Semester Hours," which met his course load requirements according to Northeastern University. Id. at 74. Further, it was Northeastern University's definition of "good standing" that governed his

7

compliance with the provision of the Contract at issue, and Collins remained in good standing at Northeastern University. Id. Second, to the extent he had failed to continue as a student at Northeastern University, this failure was caused by the disenrollment action. Id. at 75. Third, Collins was never provided a copy of the recording of the board of officers hearing. Id. Fourth, a Northeastern University official did not attend and observe Collins' disenrollment hearing, although Army Regulation 145-1, paragraph 3-43(b), provides that an official may be present. Id. Fifth, the board of officers found that Collins had engaged in misconduct, even though the hearing pertained to a breach of contract and Collins had not been charged with misconduct. Id. Finally, recoupment of all benefits would impose undue hardship on Collins. Id.

Assistant Secretary of the Army Thomas R. Lamont reviewed the board's findings and issued a final decision. He determined that Collins' disenrollment from the ROTC program was warranted "due to breach of contract by failing to maintain a full-time student status at Northeastern University (NEU) during spring semester 2008." Id. at 93. Further, the Assistant Secretary found that a waiver of repayment for education benefits was not warranted. Id. The Assistant Secretary ordered Collins to repay his debt, plus interest. Id.

### D. *ABCMR Proceedings*

After receiving the unfavorable final decision disenrolling him from the ROTC Program, Collins applied for correction of his military record. Pursuant to 10 U.S.C. § 1552(a)(1), the "Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." These corrections "shall be made by the Secretary acting through boards of civilians of the executive part of that military department." Id. In January 2013, Collins submitted an application to the Army Board for the Correction of Military Records ("ABCMR"), requesting correction of

his military records to reflect that he was wrongfully disenrolled from the ROTC Program. R. 11-12.

Collins presented four arguments to the ABCMR. First, Collins did not breach the Contract, because he was a full-time student at Northeastern University with "more than sufficient credit hours prior to Spring 2008 to advance at the end of [the] Spring 2008 semester from 'middler year' to junior academic status." Id. at 23. Second, Collins was never placed on suspension or probationary status so as to permit him to rectify his academic deficiencies. Id. Collins submitted several pages from the Army ROTC "Liberty" Battalion Cadet Handbook, which stated that the Professor of Military Science could, as "a corrective tool," place any student who failed to meet ROTC performance requirements on academic suspension. Id. at 51. Third, the board of officers erroneously found that Collins engaged in misconduct and prohibited him from repaying his debts through active duty service. Id. at 23-24. Fourth, as a matter of equity, Collins should be permitted to repay his debt by enlisting in the Army. Id. at 24.

The ABCMR denied Collins' application and found that there was no error in the Army's disenrollment of Collins based on his "breach of contract for failure to maintain full-time student status." Id. at 3. The ABCMR decision summarizes the initiation of disenrollment by the Professor of Military Science, the decision by the board of officers, and Collins' appeal to the United States Army Cadet Command. Id. at 3-4. Following this summary, the decision states that Collins' contentions "have been carefully considered and appear to lack merit." Id. at 7.

In its decision, the ABCMR noted "that the applicant admitted in his appeal that he understood the implications of his failure to fulfill his contractual obligations and accepted responsibility for his inability to correct the situation at the end of the Spring Semester of 2008." Id. at 8. "That in itself," the ABCMR wrote, "is sufficient to establish that he was aware that he

9

was not meeting the conditions of his contract." Id. The ABCMR also noted that Collins had declined a call to active duty after graduation as well as an expeditious call to active duty. Id. at 8-9. In conclusion, the ABCMR wrote that "it appears that the applicant was properly disenrolled from the ROTC Program with no violations of any of his rights, that his debt is valid, and that there is no basis to grant him authorization to enlist as a basis to repay his debt." Id. at 9. All three ABCMR members voted to deny Collins' application to correct his record. See id.

II. Discussion

Collins filed this action seeking judicial review of the ABCMR decision under the Administrative Procedure Act, 5 U.S.C. §§ 701-06. See Compl. ¶ 1. According to 5 U.S.C. § 706(2)(A) and (E), a reviewing court shall hold that an agency's "action, findings, and conclusions" are unlawful and shall set those actions, findings and conclusions aside if, *inter alia*, they are unsupported by substantial evidence or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. In reviewing administrative action, a court may not substitute its judgment for that of agency officials. Sistema Universitario Ana G. Mendez v. Riley, 234 F.3d 772, 777 (1st Cir. 2000). Judicial review of an ABCMR decision is "unusually deferential." Piersall v. Winter, 435 F.3d 319, 324 (D.C. Cir. 2006). Yet this does not mean that an ABCMR decision is unassailable. Where, for example, the ABCMR's decision "lacks any coherence," a court owes "no deference to [the Board's] purported expertise." Haselwander v. McHugh, 774 F.3d 990, 1000 (D.C. Cir. 2014) (quotation omitted).

As an initial matter, it is important to lay out which agency action is under review. Collins' lawsuit requests review of the decision denying his application to correct his military record. This is not an action for judicial review of the disenrollment proceedings themselves. Review here is limited to whether the ABCMR properly executed its statutory role, which is to

consider whether it is "necessary to correct an error or remove an injustice" in an applicant's military record. 10 U.S.C. § 1552(a)(1). Regulations governing the ABCMR provide that the board must begin "its consideration of each case with the presumption of administrative regularity." 32 C.F.R. § 581.3(e)(2). Consequently, the "applicant has the burden of proving an error or injustice by a preponderance of the evidence." Id.

Both Collins' motion for judgment on the pleadings and the Secretary's motion to affirm the ABCMR's decision present the same substantive question of whether the ABCMR's decision was arbitrary or capricious. As the party challenging the agency's decision, Collins "bears the burden of establishing that the [a]gency acted arbitrarily or capriciously or otherwise abused its discretion." M/V Cape Ann v. United States, 199 F.3d 61, 63 (1st Cir. 1999).

### A. *Whether the ABCMR Erred in Concluding the Contract was Valid*

For the first time on appeal, Collins argues that he was wrongfully disenrolled from the ROTC Program because the Contract is a contract of adhesion. See Pl.'s Opp'n to Secretary's Mot. to Affirm ABCMR Dec. 1-5 [#35]. Collins never raised this argument during the agency proceedings at issue. A general rule of administrative law is that "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952); see also Northern Wind, Inc. v. Daley, 200 F.3d 13, 18 (1st Cir. 1999). Because Collins failed to raise this argument in his ABCMR application, it does not provide a basis for reversal. See Brown v. United States, 133 Fed. Cl. 186, 198 (2017). In any

event, Collins' argument fails because 10 U.S.C. § 2005 expressly permits the Secretary to require those contractual provisions that Collins now challenges.

B. *Whether the ABCMR Erred in Concluding Collins Breached the Contract*

Next Collins argues that the ABCMR erred in holding that he breached the terms of the Contract. According to Collins, he was a "full-time student in good standing" within the meaning of the Contract, because he had enrolled in sufficient courses to advance to his next academic year at Northeastern University and had earned sufficient credits to remain in good standing. Collins *did* present this argument to the ABCMR, and thus he has preserved it.

The ABCMR held that Collins breached the Contract, but its decision is devoid of any analysis as to *how* Collins breached the Contract in light of his showing that he had completed sufficient courses to advance. It jumps from a summary of what Collins was told throughout the disenrollment proceedings to the conclusion that Collins' arguments "appear to lack merit." R. 7. While noting that ROTC personnel advised Collins "that he was in danger of disenrollment action for breach of contract for failure to maintain full-time student status," see R. 8, the ABCMR fails to explain how those personnel were *correct*.

The only place where the ABCMR decision seems to explain its reasoning is where it relies on Collins' statement in his appeal to the board of officers "that he understood the implications of his failure to fulfill his contractual obligations and accepted responsibility for his inability to correct the situation at the end of the Spring Semester of 2008." See R. 8. According to the ABCMR, "[t]hat in itself is sufficient to establish that he was aware that he was not meeting the conditions of his contract." Id. But Collins' belief that he was in breach, if untrue, does not constitute a breach. Indeed, the Contract specifies that a cadet may be deemed to have breached the Contract "regardless of whether the [the cadet] knew that the failure violated the

12

[C]ontract." R. 45. The relevant question is not what Collins *thought*. The question is what did the Contract require, and did Collins breach its terms.

As the Secretary concedes, Collins remained a "full-time student" as defined by the Contract, because he was "enrolled in sufficient academic courses to obtain sophomore, junior, and senior academic status." The Secretary defends the ABCMR's decision by arguing that the proper way to interpret the Contract's "full-time student agreement" is that it consists of two distinct requirements: (1) that the cadet remain a "full-time student," and (2) that the cadet remain "in good standing [at] his educational institution." According to the Secretary, Collins' disenrollment is justified by Collins' purported failure to remain in good standing. The problem for the Secretary is that the notion that Collins was disenrolled from the ROTC program based on failure to maintain good standing, rather than failure to maintain full-time status, is unsupported by the ABCMR's summary, analysis, or conclusion.

Failure to maintain full-time status is a phrase repeated throughout the ABCMR opinion. In the Consideration of Evidence section of its decision, the ABCMR states that Collins was advised his failures would "result in initiation of disenrollment action for breach of contract for failure to maintain full-time student status," R. 5, that a November 2008 memorandum advised Collins that disenrollment proceedings were being initiated "based on his failure to maintain full-time student status," id., and that the U.S. Army Cadet Command notified Collins he had been disenrolled "due to his failure to maintain full-time student status in Spring 2008 at Northeastern University," id. at 6. Further, the Discussion and Conclusions section of the ABCMR's opinion states that Collins was advised prior to his disenrollment that he would be disenrolled "for failure to maintain full-time student status," and "that he was in danger of disenrollment action for breach of contract for failure to maintain full-time student status." Id. at 8.

13

The Secretary asks this court to read "good standing" where the ABCMR has written "full-time student." This court reviews what an administrative agency said, not what it should have said. It will not "supply a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983); see also Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2127 (2016) ("It is not the role of the courts to speculate on reasons that might have supported an agency's action."). Courts do not credit "*post hoc* rationalization for agency action." State Farm, 463 U.S. at 50. Agency action "must be upheld, if at all, on the basis articulated by the agency itself." Id. The basis articulated by the ABCMR is insufficient.

Even if this court were to construe the ABCMR decision as holding that Collins breached the Contract based on failure to maintain good standing, nothing in the record shows Collins was *not* in good standing at Northeastern University. The Secretary concedes that nothing in the record shows Collins failed to maintain good standing. The Secretary has attempted to cure this defect by filing a Motion to Supplement the Record [#26], which requests that a document titled "Northeastern University's Undergraduate Catalog for Full-Time Day Programs in 2007-2008" be added to the record. According to the Secretary, this catalog contains a definition of "good standing" that would confirm Collins was not in good standing. This request is inconsistent with well-established principles of judicial review. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). To the extent supplemental materials are permitted in judicial review, those materials "should be explanatory of the decisionmakers' action at the time it occurred." Sierra Club v. Marsh, 976 F.2d 763, 772 (1st Cir. 1992) (internal quotations omitted). "No new rationalizations for the agency's decision should be included."

14

Id. at 772-73. The catalog is not cited anywhere in the ABCMR decision or in the administrative record. Nothing in the record shows that the ABCMR relied on the catalog. Moreover, answering the question of how Northeastern University interprets good standing would require more than reviewing the school's handbook. Rather, it would require some indication of how Northeastern University interprets its own requirements, and the existing record contains no such indication. Therefore, allowing the motion to supplement would permit the Secretary to offer a "new rationalization[] for the agency's decision." Id. at 772. That would be improper.

Despite the deferential standard of review, this court finds no support for the ABCMR's conclusion that Collins breached his Contract. The ABCMR's confusing decision fails to provide any "rational connection between the facts found and the choice made." Riley, 234 F.3d at 777 (citation omitted). Accordingly, ABCMR's finding that Collins breach his Contract is vacated.

### C. *Whether the ABCMR Erred in Failing to Correct the Board of Officers' "Misconduct" Determination*

A separate issue from whether Collins breached the Contract is whether ABCMR erred in failing to correct the board of officers' finding that he engaged in misconduct.

In its findings, the board of officers stated that "Cadet Collins did voluntarily fail to complete his requirements of the contract by his failure to maintain good standing in his academics *through his misconduct*." R. 66 (emphasis added). It further found that "Collins' misconduct does qualify as misconduct under 10 U.S.C. [§] 2005(a)(3) that warrants recoupment." Id. Collins argues that the board of officers, by using the word "misconduct," transformed a disenrollment action based on breach of contract into one for misconduct. Collins argues that the ABCMR erred in failing to correct this finding of misconduct.

Although Collins challenged the misconduct finding in his application to the ABCMR, the ABCMR ducked the issue, making no mention at all of the board of officers' reference to

15

"misconduct." Pursuant to Army regulations, misconduct can be "demonstrated by disorderly or disrespectful conduct in the ROTC classroom or during training, or other misconduct that substantially interferes with the ROTC mission, including participation in unlawful demonstrations against the ROTC, illegal interference with rights of other ROTC students, or similar acts." See Army Regulation 145-1, ¶ 3-43a(12). This is distinct from an action for breach of contract under ¶ 3-43a(16), which "is defined as any act, performance or nonperformance on the part of a student that breaches the terms of the contract." Misconduct under ¶ 3-43a(12) provides a separate basis upon which a cadet may be disenrolled from ROTC. Nothing in the record cites to ¶ 3-43a(12) or shows Collins was ever charged with misconduct.

The Secretary defends the ABCMR's decision not to correct the board of officers' decision by contending that while that board of officers' decision may have been imprecise in its wording, the board of officers meant only to find Collins had breached Contract.

The court does not so easily disregard the board of officers' language. Because of the board of officers' statement of findings, Collins' military record shows that he was disenrolled from the ROTC program for misconduct, even though he was never charged with misconduct and there is no evidence in the administrative record to show that he engaged in misconduct as defined by Army regulations.

In sum, the ABCMR's failure to consider Collins' argument that his record should be corrected to reflect that he did not engage in misconduct was arbitrary and capricious and unsupported by substantial evidence. The ABCMR shall address Collins' arguments as to the misconduct finding on remand.

D.  *Whether the ABCMR Erred by Failing to Observe Required Procedures*

Collins raises several other arguments regarding the Army's failure to observe certain procedural requirements during the disenrollment process. These arguments are: (1) a Northeastern University official was not present during his disenrollment hearing; (2) the Professor of Military Science failed to invoke procedures that would have allowed Collins to continue under a suspension of benefits for one semester to correct alleged deficiencies in his academic performance; and (3) the board of officers violated Army regulations when a transcript of the hearing before the board of officers was destroyed. If credited, these issues could provide independent bases for correcting Collins' military record. Yet the ABCMR did not address these issues, and this court will not do so in the first instance.

E.  *Whether this Court Should Correct Collins' Military Record*

Collins requests further that this court correct Collins' military record to reflect that he did not breach the Contract, was wrongfully disenrolled, and should not be required to pay recoupment. Collins would have this court, after vacating the ABCMR's decision, act in the role of a super-review board, weighing evidence as to whether Collins was in good standing. Collins' requested relief is inconsistent with longstanding principles governing judicial review. Those principles hold that, when an administrative record fails to support agency action, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985). "Generally speaking, a [reviewing court] should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." I.N.S. v. Orlando Ventura, 537 U.S. 12, 16 (2002). Here the statute unquestionably places the decision primarily in the agency's hands, as it states that the Secretary may correct a military record "when *the Secretary* considers it necessary to

correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Thus, remand is the appropriate remedy to determine whether Collins breached his Contract by failing to maintain good standing at Northeastern University, and if so, whether he should be permitted to enroll in active duty or be ordered to repay the Army for his scholarship contract. Remand is also the appropriate remedy to allow the ABCMR to address Collins' arguments as to the misconduct.

Remand is not a meaningless remedy. The ABCMR is required to exercise its statutory authority to "correct any military record . . . when . . . necessary to correct an error remove an injustice." 10 U.S.C. § 1552(a)(1). Regulations governing the ABCMR provide that, if the ABCMR denies an application to correct a military record, the ABCMR will provide its rationale in writing. See 32 C.F.R. § 581.3(g)(1). It shall review each application to determine "[w]ether the preponderance of the evidence shows that an error or injustice exists." Id. § 581.3(e)(iii)(A). If such the evidence shows the existence of such error or injustice, the ABCMR shall provide appropriate relief. Id. § 581.3(e)(iii)(A)(1). Therefore, the ABCMR must consider Collins' arguments and provide an adequate explanation for the action that it takes. See Cowles v. McHugh, 13-cv-1741, 2014 WL 12767682, at *11 (D. Conn. Sept. 30, 2014) (citing PBGC v. LTV Corp., 496 U.S. 633, 654 (1990)); see also Hill v. Geren, 597 F. Supp. 2d 23, 34 (D.D.C. 2009).

Moreover, to the extent the Collins' procedural arguments were properly raised to the ABCMR and are not frivolous, the ABCMR must consider and address them on remand. See, e.g., Cowles, 2014 WL 12767682, at *11; Hill, 597 F. Supp. 2d at 34.

III. Conclusion

For the foregoing reasons, Collins' Motion for Judgment on the Administrative Record [#24] is ALLOWED in part and DENIED in part, the Secretary's Motion to Affirm ABCMR's

18

Decision [#27] is DENIED, and the Secretary's Motion to Supplement the Record [#26] is DENIED. Specifically, the ABCMR's denial of Collins' application is VACATED, and this case is REMANDED to the ABCMR "for a prompt disposition of this matter consistent with this opinion." Haselwander, 774 F.3d at 993 (quotation omitted).

    IT IS SO ORDERED.

March 20, 2018                                                        /s/ Indira Talwani
                                                                       United States District Judge